FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

            -v.-                  :          <u>INDICTMENT</u>

ANTHONY BARATTA, a/k/a "Bowat,"   :          92 Cr. 529
ANTHONY RUSSO, a/k/a "Curly,"
ANTHONY DiMEGLIO, a/k/a           :
     "Big Anthony,"
JOSEPH MASSARO, a/k/a             :
     "Joey Bang Bang,"
JOSEPH KERNS, a/k/a "Joey K,"     :
PIETRO MISURACA, a/k/a
     "Petey Pizza,"               :

            Defendants.           :

- - - - - - - - - - - - - - - - - - X

<u>COUNT ONE</u>

The Grand Jury charges:

At all times relevant to this Indictment:

<u>The Enterprise</u>

1.  The members and associates of the Luchese Family of
La Cosa Nostra ("the Luchese Family") constituted an "enterprise"
as that term is defined in Title 18, United States Code, Section
1961(4), that is, a group of individuals associated in fact, which
was engaged in and the activities of which affected interstate
commerce.  The Luchese Family was an organized criminal group that
operated in the Southern District of New York and elsewhere.  The
Luchese Family was referred to by its members in various ways,
including as a "cosa nostra," a "family" and "this thing of ours."

2.  The Luchese Family operated through groups of
individuals known as "crews" and "regimes."  Each "crew" had as its
leader a person known as a "Capo" or "Captain" and consisted of



"made" members, sometimes known as "soldiers," "friends of ours," and "good fellows." Other individuals, known as "associates," and sometimes referred to as "connected" or identified as "with" a soldier, participated in the varied activities of the crew and its members.

3.   Each captain was responsible for supervising the criminal activities of his crew, and provided crew members and associates with support and protection.  In return, the captain received a share of the earnings of each of his crew's members and associates.

4.   Above the captains were the highest-ranking members of the Luchese Family.  The head of the Luchese Family was known as the "Boss," who was assisted by an "Underboss."  The Boss and Underboss were responsible for, among other things, setting policy, resolving disputes among members of the Luchese Family, and resolving disputes between members of the Luchese Family and members of other criminal organizations.

5.   The Boss and Underboss of the Luchese Family supervised, supported, protected and disciplined the captains, soldiers and associates, and regularly received reports regarding their various activities.  In return for their supervision and protection, the Boss and Underboss received part of the illegal earnings of each crew.

6.   At various times relevant to this Indictment, the Boss and Underboss of the Luchese Family were fugitives from justice and delegated much of their supervisory authority over the

2

affairs of the Luchese Family to an "Acting Boss" and an "Acting Underboss" and, later, to a panel that consisted of four captains of the Luchese Family.

7. The Luchese Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra," which operated through entities known as "Families."

8. From time to time, the Luchese Family would propose a list of associates to be "made," that is, to become members of the Luchese Family. This list would be circulated to the other Families based in the City of New York. Upon becoming "made," each member would take an oath of "omerta," vowing never to reveal any information about the Luchese Family, its members or its associates.

### The Defendants

9. At various times relevant to this Indictment, the defendants were members or associates of a crew of the Luchese Family, that since in or about 1980 has had as its captain, the defendant ANTHONY RUSSO, a/k/a "Curly," "Big Sam" Cavalieri, and the defendant ANTHONY BARATTA, a/k/a "Bowat," respectively.

10. At various times relevant to this Indictment, the defendant ANTHONY BARATTA, a/k/a "Bowat," was a member of a panel of four "Capos" that administered and supervised the affairs of the Luchese Family, and an acting "Underboss," "Capo," and "Soldier" in the Luchese Family and was a partner in, among other things, the enterprise's illegal gambling businesses. The defendant ANTHONY BARATTA, a/k/a "Bowat," participated in various aspects of the

3

enterprise's criminal activities, including the extortion of various businesses, and mediated disputes with members of other organized crime Families. As "Capo" and as a member of the panel of four "Capos" the defendant ANTHONY BARATTA, a/k/a "Bowat," approved the commission of murders by members and associates of the Luchese Family.

11. At various times relevant to this Indictment, the defendant ANTHONY RUSSO, a/k/a "Curly," was a "Capo," and "Soldier" in the Luchese Family and was a partner in, among other things, the enterprise's illegal gambling businesses, loansharking, and counterfeit credit card operations. The defendant ANTHONY RUSSO, a/k/a "Curly," participated in various aspects of the enterprise's criminal activities, including the production of counterfeit credit cards, the extortionate extension of credit, extortion, and the commission of murder by members and associates of the Luchese Family.

12. At various times relevant to this Indictment, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," was a "Soldier" in the Luchese Family and was a partner in, among other things, the enterprise's illegal gambling businesses and counterfeit credit card operations. The defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," participated in various aspects of the enterprise's criminal activities, including the commission of arson and murder.

13. At various times relevant to this Indictment, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," was a "Soldier" in the Luchese Family and was a partner in, among other things, the

**4**

enterprise's illegal gambling businesses and loansharking operations. The defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," participated in various aspects of the enterprise's criminal activities, including arson, extortion, the extortionate extension of credit, and murder.

14. At various times relevant to this Indictment, the defendant JOSEPH KERNS, a/k/a "Joey K," was an associate of the Luchese Family, and participated in various aspects of the enterprise's criminal activities, including loansharking, gambling, and murder.

15. At various times relevant to this Indictment, the defendant PIETRO MISURACA, a/k/a "Petey Pizza," was an associate of the Luchese Family, and participated in various aspects of the enterprise's criminal activities, including loansharking, gambling, and extortion.

### Purposes of the Enterprise

16. The purposes of the enterprise included the following:

a. Enriching the members of the enterprise through, among other things, (i) the acquisition and control of businesses and property through threats of violence and violence, including arson and murder; (ii) extortionate extensions and collections of credit, commonly known as "loansharking" or "shylocking"; (iii) the collection of unlawful debts; (iv) the interstate transportation of property obtained by fraudulent means; and (v) the operation of illegal gambling businesses involving sports and horse betting, or

5

bookmaking, and games of chance;

b.   Preserving and augmenting the power, territory and financial profits of the enterprise by committing and attempting acts of violence and murder;

c.   Keeping victims and citizens in fear of the enterprise and its racketeers by identifying the enterprise with threats of violence, violence and murder.

### Means and Methods of the Enterprise

17.   Among the means and methods by which the defendants and their co-racketeers conducted and participated in the conduct of the affairs of the enterprise were the following:

a.   Members of the enterprise and their co-racketeers committed, attempted and threatened to commit acts of violence, including murder and arson to protect and expand the enterprise's business and criminal operations.

b.   Members of the enterprise and their co-racketeers promoted a climate of fear through violence and threats of violence.

c.   Members of the enterprise and their co-racketeers used and threatened to use physical violence against various individuals to induce those individuals to pay debts they had lawfully incurred to businesses that engaged members of the enterprise to collect such debts through means of violence and intimidation.

d.   Members of the enterprise and their co-racketeers made extortionate extensions of credit, commonly known

6

as "loansharking" or "shylocking," using the enterprise's reputation for violence, as well as actual threats of violence and violence, to ensure that the victims paid the illegal interest and repaid the loans.

     e.    Members of the enterprise and their co-racketeers collected unlawful debts by collecting debts incurred in connection with the business of lending money at illegal interest rates.

     f.    Members of the enterprise and their co-racketeers established and operated illegal gambling businesses involving sports betting, horse betting, bookmaking, and games of chance and collected and shared the revenue among members and associates of the enterprise.

     g.    Members of the enterprise and their co-racketeers fraudulently trafficked in thousands of counterfeit credit cards.

     h.    Members of the enterprise and their co-racketeers transported interstate and caused the interstate transportation of property purchased with counterfeit credit cards.

     i.    Members of the enterprise and ·their co-racketeers attempted to identify and identified individuals suspected of or likely to provide information about the enterprise, its members and activities to law enforcement.

     j.    Members of the enterprise and their co-racketeers attempted, conspired, and committed murder of individuals suspected of providing information about the

7

enterprise, its members and activities to law enforcement.

## The Racketeering Conspiracy

18.  From in or about January, 1979 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, ANTHONY BARATTA, a/k/a "Bowat," ANTHONY RUSSO, a/k/a "Curly," ANTHONY DiMEGLIO, a/k/a "Big Anthony," JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey K," PIETRO MISURACA, a/k/a "Petey Pizza," the defendants, and others known and unknown to the Grand Jury, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 17 above, which enterprise was engaged in, and the activities of which affected, interstate commerce unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5). Each of the defendants participated in the conduct of the enterprise's affairs through the commission of multiple racketeering acts, as set forth in Paragraphs 19 through 45 below.

### The Pattern of Racketeering

19.  The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

### The Murders and Murder Conspiracies

20.  Act of Racketeering One

#### a. The Conspiracy to Murder Joseph Fiorito

It was a part of the pattern of racketeering activity that, from in or about January, 1990, through in or about September, 1990, in the State of New York, the defendants JOSEPH MASSARO, a/k/a "Joey Bang Bang," and JOSEPH KERNS, a/k/a "Joey K," together with others known and unknown, unlawfully, willfully, and knowingly conspired to murder Joseph Fiorito, in violation of the New York State Penal Law.

#### b.  The Murder of Joseph Fiorito

It was a part of the pattern of racketeering activity that, on or about September 20, 1990, in the State of New York, the defendants JOSEPH MASSARO, a/k/a "Joey Bang Bang," and JOSEPH KERNS, a/k/a "Joey K," together with others known and unknown, unlawfully, willfully and knowingly murdered Joseph Fiorito, in violation of the New York State Penal Law.

21.  Act of Racketeering Two

#### a.  The Conspiracy to Murder Victor Malinsky

It was a part of the pattern of racketeering activity that, in or about February, 1983, in the State of New York, the defendants ANTHONY RUSSO, a/k/a "Curly," and ANTHONY DiMEGLIO,

9

a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and knowingly conspired to murder Victor Malinsky, in violation of the New York State Penal Law.

### b.  The Murder of Victor Malinsky

It was a part of the pattern of racketeering activity that, on or about February 5, 1983, in the State of New York, the defendants ANTHONY RUSSO, a/k/a "Curly," and ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and knowingly murdered Victor Malinsky, in violation of the New York State Penal Law.

### 22.  Act of Racketeering Three

### a.  The Conspiracy to Murder Anthony Fava

It was a part of the pattern of racketeering activity that, from in or about April, 1991, through in or about September, 1991, in the State of New York, the defendant ANTHONY BARATTA, a/k/a "Bowat," together with others known and unknown, unlawfully, willfully and knowingly conspired to murder Anthony Fava, in violation of the New York State Penal Law.

### b.  The Murder of Anthony Fava

It was a part of the pattern of racketeering activity that, on or about September 19, 1991, in the State of New York, the defendant ANTHONY BARATTA, a/k/a "Bowat," together with others known and unknown, unlawfully, willfully and knowingly murdered Anthony Fava, in violation of the New York State Penal Law.

23.  <u>Act of Racketeering Four</u>

    a.  <u>The Conspiracy to Murder Nelson Counee</u>

It was a part of the pattern of racketeering activity that, from in or about January, 1990, through in or about March, 1990, in the State of New York, the defendants ANTHONY BARATTA, a/k/a "Bowat," and ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and knowingly conspired to murder Nelson Counee, in violation of the New York State Penal Law.

    b.  <u>The Attempted Murder of Nelson Counee</u>

It was a part of the pattern of racketeering activity that, on or about March 16, 1990, in the State of New York, the defendants ANTHONY BARATTA, a/k/a "Bowat," and ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and knowingly attempted to murder Nelson Counee, in violation of the New York State Penal Law.

24.  <u>Act of Racketeering Five</u>

    a.  <u>The Conspiracy to Murder Vladimir Jadick</u>

It was a part of the pattern of racketeering activity that, from in or about July, 1991, through in or about September, 1991, in the State of New York, the defendant ANTHONY BARATTA, a/k/a "Bowat," together with others known and unknown, unlawfully, willfully and knowingly conspired to murder Vladimir Jadick, in violation of the New York State Penal Law.

    b.  <u>The Solicitation to Murder Vladimir Jadick</u>

It was a part of the pattern of racketeering activity

11

that, in or about the summer of 1991, in the State of New York, defendant ANTHONY BARATTA, a/k/a "Bowat," with the intent 1 Vittorio Amuso, a/k/a "Vic," and Anthony Casso, a/k/a "Gaspip-, a/k/a "Gas," authorize and direct the murder of Vladimir Jadick, unlawfully, willfully and knowingly solicited, requested, importuned and otherwise attempted to cause Vittorio Amuso, a/k/a "Vic," and Anthony Casso, a/k/a "Gaspipe," a/k/a "Gas," to engage in such conduct, in violation of the New York State Penal Law.

25.  Act of Racketeering Six

a.  The Conspiracy to Murder "Nicky Slash"

It was a part of the pattern of racketeering activity that, in or about October, 1986, in the State of New York, the defendants ANTHONY DiMEGLIO, a/k/a "Big Anthony," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully and knowingly conspired to murder a man known as "Nicky Slash," in violation of the New York State Penal Law.

b.  The Conspiracy to Murder Zev Mustafa

It was a part of the pattern of racketeering activity that, in or about October, 1986, in the State of New York, the defendants ANTHONY DiMEGLIO, a/k/a "Big Anthony," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully and knowingly conspired to murder Zev Mustafa, in violation of the laws of the New York State Penal Law.

12

### Extortion of Businesses

26.   <u>Act of Racketeering Seven</u>

a.   <u>Partner's Lounge Extortion Conspiracy</u>

It was a part of the pattern of racketeering activity
that, from in or about March, 1989, through in or about November,
1989, in the Southern District of New York and elsewhere, the
defendants ANTHONY BARATTA, a/k/a "Bowat," ANTHONY RUSSO, a/k/a
"Curly," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with
others known and unknown, unlawfully, willfully, and knowingly,
combined, conspired, confederated, and agreed together and with
each other to obtain property, to wit, money, by extortion, from
and with the consent of the owner and operator of a certain
business, namely, the Partner's Lounge bar, which was engaged in
interstate commerce, and from persons associated with said
business, which consent had been induced by the wrongful use of
actual and threatened force, violence and fear, and thereby would
and did obstruct, delay and affect commerce, in violation of Title
18, United States Code, Section 1951.

b.   <u>Partner's Lounge Extortion</u>

It was a part of the pattern of racketeering activity
that, from in or about March, 1989, through in or about November,
1989, in the Eastern District of New York and elsewhere, the
defendants ANTHONY BARATTA, a/k/a "Bowat," ANTHONY RUSSO, a/k/a
"Curly," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with
others known and unknown, unlawfully, willfully, and knowingly,
did obtain property, to wit, money, by extortion, from and with the

13

consent of the owner and operator of a certain business, na

the Partner's Lounge bar, which was engaged in interstate comr

and from persons associated with said business, which consent had

been induced by the wrongful use of actual and threatened force,

violence and fear, and thereby would and did obstruct, delay and

affect commerce, and attempted to do the same, in violation of

Title 18, United States Code, Sections 1951 and 2.

    27.  <u>Act of Racketeering Eight</u>

    a. <u>La Shea Supper Club Extortion Conspiracy</u>

It was a part of the pattern of racketeering activity

that, from in or about January, 1985, through in or about March,

1987, in the Southern District of New York and elsewhere, the

defendants ANTHONY RUSSO, a/k/a "Curly," and JOSEPH MASSARO, a/k/a

"Joey Bang Bang," together with others known and unknown,

unlawfully, willfully, and knowingly, combined, conspired,

confederated, and agreed together and with each other to obtain

money and property by extortion, from and with the consent of the

owners and operators of a certain business, namely, the La Shea

Supper Club, which was engaged in interstate commerce, and from

persons associated with said business, which consent had been

induced by the wrongful use of actual and threatened force,

violence and fear, and thereby would and did obstruct, delay and

affect commerce, in violation of Title 18, United States Code,

Section 1951.

    b. <u>La Shea Supper Club Extortion</u>

It was a part of the pattern of racketeering activity

14

that, from in or about January, 1985, through in or about March, 1987, in the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, did obtain money and property by extortion, from and with the consent of the owners and operators of a certain business, namely, the La Shea Supper Club, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, and attempted to do the same, in violation of Title 18, United States Code, Sections 1951 and 2.

　　　　28.  <u>Act of Racketeering Nine</u>

　　　　　　a.  <u>American Application Extortion Conspiracy</u>

　　　　It was a part of the pattern of racketeering activity that, from in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, American Application Associates of New Jersey, Inc., which was engaged in interstate commerce, and from persons associated with said

business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

### b.   American Application Extortion

It was a part of the pattern of racketeering activity that, from in or about January, 1989, through in or about February, 1990, in the District of New Jersey and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, did obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, American Application Associates of New Jersey, Inc., which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, and attempted to do the same, in violation of Title 18, United States Code, Sections 1951 and 2.

### c.   American Application -- Travel in Aid of The Racketeering Enterprise

It was a part of the pattern of racketeering activity that from in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully and knowingly did travel in interstate

16

commerce with intent to (i) distribute the proceeds of unlawful activities, namely, the extortion of American Application Associates of New Jersey, Inc., (ii) commit crimes of violence to further such unlawful activities, and (iii) promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activities, and thereafter performed and attempted to perform acts described in (i), (ii) and (iii) above, respectively, in violation of Title 18, United States Code, Sections 1952 and 2.

29.  <u>Act of Racketeering Ten</u>

a.  <u>K. M. Gabel Co. Extortion Conspiracy</u>

It was a part of the pattern of racketeering activity that, from in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, K. M. Gabel Company, Inc., New Jersey, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

b.  <u>K. M. Gabel Co., Inc. Extortion</u>

It was a part of the pattern of racketeering activity that, from in or about January, 1989, through in or about February, 1990, in the District of New Jersey and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, did obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, K. M. Gabel Company, Inc., Ringwood, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, and attempted to do the same, in violation of Title 18, United States Code, Sections 1951 and 2.

c.  K. M. Gabel Co., Inc. -- Travel in Aid of
<u>The Racketeering Enterprise</u>

It was a part of the pattern of racketeering activity that from in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully and knowingly did travel in interstate commerce with intent to (i) distribute the proceeds of unlawful activities, namely, the extortion of K. M. Gabel Company, Inc., New Jersey, (ii) commit crimes of violence to further such unlawful activities, and (iii) promote, manage, establish, carry on and

18

facilitate the promotion, management, establishment and carrying on of such unlawful activities, and thereafter performed and attempted to perform acts described in (i), (ii) and (iii) above, respectively, in violation of Title 18, United States Code, Sections 1952 and 2.

### 30. Act of Racketeering Eleven

#### a. Tiffany's Shooting Star Agency - - Extortion Conspiracy

It was a part of the pattern of racketeering activity that, from in or about January, 1980, through in or about April, 1986, in the Southern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to obtain money and property, by extortion, from and with the consent of the owners and operators of a certain business, namely, Tiffany's Shooting Stars Agency, Inc., which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

#### b. Tiffany Shooting Stars Agency - - Extortion

It was a part of the pattern of racketeering activity that, from in or about January, 1980, through in or about April,

19

1986, in the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, did obtain money and property, by extortion, from and with the consent of the owners and operators of a certain business, namely, Tiffany's Shooting Stars Agency, Inc., which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, and attempted to do the same, in violation of Title 18, United States Code, Sections 1951 and 2.

### 31.  Act of Racketeering Twelve

### Riese Organization Extortion Conspiracy

It was a part of the pattern of racketeering activity that, from in or about May, 1991, through in or about October, 1991, in the Eastern District of New York and elsewhere, the defendant PIETRO MISURACA, a/k/a "Petey Pizza," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated and agreed together and with each other to obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, the Riese Organization, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did

20

obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

**Extortion by Means of Arson**

**The Class Act Bar**

32. **Act of Racketeering Thirteen**

    a. **The Class Act Bar Extortion Conspiracy**

It was a part of the pattern of racketeering activity that, from in or about January, 1988, up to and including the date of the filing of this Indictment, in the Eastern District of New York and elsewhere, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated and agreed together and with each other to obtain money and property, by extortion, from and with the consent of the owners and operators of a certain business, namely, the Class Act Bar, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

    b. **The Conspiracy to Burn the Class**
       **Act Bar -- August, 1989**

It was a part of the pattern of racketeering activity that, in or about August, 1989, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly, conspired to damage a building, namely, the Class Act Bar, by

21

starting a fire, in violation of the New York State Penal Law.

### c.  The Fire at the Class Act Bar -- August 23, 1989

It was a part of the pattern of racketeering activity that, on or about August 23, 1989, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly damaged and attempted to damage a building, namely, the Class Act Bar, by starting a fire, in violation of the New York State Penal Law.

### 33.  Act of Racketeering Fourteen

### a.  The Conspiracy to Burn the Class Act Bar -- February, 1988

It was a part of the pattern of racketeering activity that, in or about February, 1988, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly, conspired to damage a building, namely, the Class Act Bar, by starting a fire, in violation of the New York State Penal Law.

### b.  The Fire at the Class Act Bar -- February 12, 1988

It was a part of the pattern of racketeering activity that, on or about February 12, 1988, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly damaged and attempted to damage a building, namely, the Class Act Bar, by causing a fire, in violation of the New York State Penal Law.

## The Carousel Lounge

34.  Act of Racketeering Fifteen

### a.  The Carousel Lounge Extortion Conspiracy

It was a part of the pattern of racketeering activity that, from in or about January, 1984, up to and including the date of the filing of this Indictment, in the Eastern District of New York and elsewhere, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated and agreed together and with each other to obtain money and property, by extortion, from and with the consent of the owners and operators of a certain business, namely, the Carousel Lounge, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

### b.  The Conspiracy to Burn the Carousel Lounge -- January, 1984

It was a part of the pattern of racketeering activity that, in or about January, 1984, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly, conspired to damage a building, namely, the Carousel Lounge, by starting a fire, in violation of the New York State Penal Law.

### c.  The Fire at the Carousel Lounge
### -- January 6, 1984

It was a part of the pattern of racketeering activity that, on or about January 6, 1984, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly damaged and attempted to damage a building, namely the Carousel Lounge, by causing a fire, in violation of the New York State Penal Law.

### 35.  Act of Racketeering Sixteen

### a.  The Conspiracy to Burn the
### Carousel Lounge -- November, 1987

It was a part of the pattern of racketeering activity that, in or about November, 1987, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly, conspired to damage a building, namely, the Carousel Lounge, by starting a fire, in violation of the New York State Penal Law.

### b.  The Fire at the Carousel Lounge
### -- November 28, 1987

It was a part of the pattern of racketeering activity that, on or about November 28, 1987, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly damaged and attempted to damage a building, namely the Carousel Lounge, by starting a fire, in violation of the New York State Penal Law.

24

36.   Act of Racketeering Seventeen

a.   The  Conspiracy  to  Burn  the
Carousel Lounge -- September, 1988

It was a part of the pattern of racketeering activity
that, in or about September, 1988, in the State of New York, the
defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with
others known and unknown, unlawfully, intentionally and knowingly,
conspired to damage a building, namely, the Carousel Lounge, by
starting a fire, in violation of the New York State Penal Law.

b.   The Fire at the Carousel Lounge
-- September 26, 1988

It was a part of the pattern of racketeering activity
that, on or about September 26, 1988, in the State of New York, the
defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with
others known and unknown, unlawfully, intentionally and knowingly
damaged and attempted to damage a building, namely the Carousel
Lounge, by starting a fire, in violation of the New York State
Penal Law.

37.   Act of Racketeering Eighteen

a.   The Excaliber Lounge -- Extortion Conspiracy

It was a part of the pattern of racketeering that, from
in or about January, 1988, up to and including the date of the
filing of this Indictment, in the Eastern District of New York and
elsewhere, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang,"
together with others known and unknown, unlawfully, willfully, and
knowingly, combined, conspired, confederated and agreed together
and with each other to obtain money and property, by extortion,

25

from and with the consent of the owners and operators of a certain business, namely, the Excaliber Bar, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, in violation of Title 18, United States Code, Section 1951.

### b. Conspiracy to Burn the Excaliber Lounge -- February, 1989

It was a part of the pattern of racketeering activity that, in or about February, 1989, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly, conspired to damage a building, namely, the Excaliber Lounge, by starting a fire, in violation of the New York State Penal Law.

### c. The Fire at the Excaliber Lounge -- February 20, 1989

It was a part of the pattern of racketeering activity that, on or about February 20, 1989, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly damaged and attempted to damage a building, namely the Excaliber Lounge, by starting a fire, in violation of the New York State Penal Law.

### Arsons

38. Act of Racketeering Nineteen

    a.  Conspiracy to Burn The Bingo
        Palace

It was a part of the pattern of racketeering activity that, from in or about June, 1989, through in or about November, 1989, in the State of New York and elsewhere, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and maliciously, conspired to set fire to and burn the Bingo Palace, in violation of the laws of the State of Maryland.

    b.  The Bingo Palace Fire

It was a part of the pattern of racketeering activity that, on or about October 5, 1989, in the State of Maryland, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and maliciously, set fire to, burned, and caused to be burned the Bingo Palace, in violation of the laws of the State of Maryland.

    c.  The Bingo Palace -- Travel in Aid of
        The Racketeering Enterprise

It was a part of the pattern of racketeering activity that from in or about September, 1988, through in or about November, 1989, in the Southern District of New York and elsewhere, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and knowingly did travel in interstate commerce with intent to (i) distribute the proceeds of unlawful activities, namely, the arson of the Bingo

27

Palace, Route 3, Gambrills, Maryland, (ii) commit crimes of violence to further such unlawful activities, and (iii) promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activities, and thereafter performed and attempted to perform acts described in (i), (ii) and (iii) above, respectively, in violation of Title 18, United States Code, Sections 1952 and 2.

### 39.  Act of Racketeering Twenty

#### a.  The Conspiracy to Burn Tiffany's Shooting Stars Agency

It was a part of the pattern of racketeering activity that, in or about April, 1984, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly, conspired to damage a building, namely, the offices of Tiffany's Shooting Stars Agency, by starting a fire, in violation of the New York State Penal Law.

#### b.  The Fire at Tiffany's Shooting Stars Agency

It was a part of the pattern of racketeering activity that, on or about April 21, 1984, in the State of New York, the defendant JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, intentionally and knowingly damaged and attempted to damage a building, namely, the offices of Tiffany's Shooting Stars Agency, by causing a fire, in violation of the New York State Penal Law.

28

### Extortionate Extensions of Credit

40.  Act of Racketeering Twenty-one

   a.  Conspiracy to Make Extortionate
       Extensions of Credit

   It was a part of the pattern of racketeering activity
that, from in or about January, 1979, up to and including the date
of the filing of this Indictment, in the Southern District of New
York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly,"
JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey
K," PIETRO MISURACA, a/k/a "Petey Pizza," and others known and
unknown, unlawfully, willfully, and knowingly combined, conspired,
confederated and agreed together and with each other to make
extortionate extensions of credit, as that term is defined in Title
18, United States Code, Section 891, in violation of Title 18,
United States Code, Sections 891 and 892.

   b.  Conspiracy to Collect Extensions
       of Credit by Extortionate means

   It was a part of the pattern of racketeering activity
that, from in or about January, 1979, up to and including the date
of the filing of this Indictment, in the Southern District of New
York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly,"
JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey
K," PIETRO MISURACA, a/k/a "Petey Pizza," and others known and
unknown, unlawfully, willfully, and knowingly combined, conspired,
confederated, and agreed together and with each other to use
extortionate means to collect and attempt to collect extensions of
credit, and to punish persons for the non-payment of said

extensions of credit, as that term is defined in Title 18, United States Code, Section 891, in violation of Title 18, United States Code, Sections 891 and 894.

### c. Financing Extortionate Extensions of Credit

It was a part of the pattern of racketeering activity that, from in or about January, 1979, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," JOSEPH MASSARO, a/k/a "Joey Bang-Bang," and others known and unknown, unlawfully, willfully and knowingly did advance money to other persons with reasonable grounds to believe that it was the intention of such persons to use the money so advanced directly and indirectly for the purpose of making extortionate extensions of credit, as that term is defined in Title 18, United States Code, Sections 891, in violation of Title 18, United States Code, Sections 893 and 2.

### Illegal Gambling Businesses

### 41.  Act of Racketeering Twenty-two

### Crap Game at 2448 Williamsbridge Road, Bronx

It was a part of the pattern of racketeering activity that, from in or about March, 1990, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," ANTHONY DiMEGLIO, a/k/a "Big Anthony," and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal

30

gambling business, to wit, a crap game at 2448 Williamsbridge Road, Bronx, New York, in violation of the laws of the State of New York, to wit, New York State Penal Law, Section 225.05, which business involved five or more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and had remained in substantially continuous operation for in excess of thirty (30) days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

### 42.   Act of Racketeering Twenty-three

#### Crap Game at 183 Grand Street, Manhattan

It was a part of the pattern of racketeering activity that, from in or about November, 1982, up to and including the date of the filing of this Indictment in the Southern District of New York and elsewhere, the defendant ANTHONY RUSSO, a/k/a "Curly," and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, namely, a crap game at 183 Grand Street, New York, New York, in violation of the laws of the State of New York, to wit, New York State Penal Law, Section 225.05, which business involved five or more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and had remained in substantially continuous operation for in excess of thirty (30) days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

31

## Transmission of Wagering Information -- Horse Betting Parlors

### 43.   Act of Racketeering Twenty-four

#### 69-14 Roosevelt Avenue, Queens, New York

It was a part of the pattern of racketeering activity that, from in or about January, 1988, up to and including the date of the filing of this Indictment, in the Eastern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," JOSEPH MASSARO, a/k/a "Joey Bang Bang," PIETRO MISURACA, a/k/a "Petey Pizza," and others known and unknown, unlawfully, willfully and knowingly did engage at 69-14 Roosevelt Avenue, Queens, New York, in the business of betting and wagering and knowingly used wire communication facilities for the transmission in interstate and foreign commerce of bets and wagers and information assisting in the placing of bets and wagers on sporting events and contests, and for the transmission of wire communications which entitle the recipient to receive money and credit as a result of bets and wagers, and for information assisting in the placing of bets and wagers, in violation of Title 18, United States Code, Sections 1084 and 2.

### 44.   Act of Racketeering Twenty-five

#### a. Scorpio's Social Club

It was a part of the pattern of racketeering activity that, from in or about January, 1990, up to and including the date of the filing of this Indictment, in the Eastern District of New York and elsewhere, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," and others known and unknown, unlawfully, willfully and

knowingly did engage at Scorpio's Social Club 30-01 35th Avenue, Jackson Heights, New York, in the business of betting and wagering and knowingly used wire communication facilities for the transmission in interstate and foreign commerce of bets and wagers and information assisting in the placing of bets and wagers on sporting events and contests, and for the transmission of wire communications which entitle the recipient to receive money and credit as a result of bets and wagers, and for information assisting in the placing of bets and wagers, in violation of Title 18, United States Code, Sections 1084 and 2.

b.  <u>Hollywood Nights</u>

It was a part of the pattern of racketeering activity that, from in or about January, 1990, up to and including the date of the filing of this Indictment, in the Eastern District of New York and elsewhere, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," and others known and unknown, unlawfully, willfully and knowingly did engage at Hollywood Nights, 44-02 31st Avenue, Queens, New York, in the business of betting and wagering and knowingly used wire communication facilities for the transmission in interstate and foreign commerce of bets and wagers and information assisting in the placing of bets and wagers on sporting events and contests, and for the transmission of wire communications which entitle the recipient to receive money and credit as a result of bets and wagers, and for information assisting in the placing of bets and wagers, in violation of Title 18, United States Code, Sections 1084 and 2.

33

<u>The Interstate Transportation of Stolen Property</u>

45.  <u>Act of Racketeering Twenty-six</u>

It was a part of the pattern of racketeering activity that, from in or about January 1984, through in or about January 1986, in the Southern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," ANTHONY DiMEGLIO, and others known and unknown, unlawfully, willfully, and knowingly did transport and cause to be transported in interstate and foreign commerce, goods, wares, merchandise and money of a value of $5,000 and more, knowing the same to have been converted and taken by fraud, namely, by the purchase of said goods, wares, and merchandise using counterfeit credit cards, in violation of Title 18, United States Code, Sections 2314 and 2.

(Title 18, United States Code, Section 1962(d).)

**COUNT TWO**

The Grand Jury further charges:

46.  Paragraphs 1 through 17, and 19 through 45 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

47.  From in or about January, 1979, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," ANTHONY RUSSO, a/k/a "Curly," ANTHONY DiMEGLIO, a/k/a "Big Anthony," JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey K," PIETRO MISURACA, a/k/a "Petey Pizza," and others known and unknown, being persons employed by and associated with

34

the racketeering enterprise described in Paragraphs 1 through 17 of Count One of this Indictment, unlawfully, willfully, and knowingly did conduct and participate, directly and indirectly, in the affairs of that enterprise, which was engaged in and the activities of which affected interstate commerce, through a pattern of racketeering activity, to wit, the racketeering acts set forth in Paragraphs 19 through 46 in Count One of this Indictment as racketeering acts One through Twenty-six.

(Title 18, United States Code, Sections 1962(c) and 2.)

### Murder and Violent Crimes in Aid of Racketeering Activity

48. Paragraphs 1 through 17 and 19 through 45 of this Indictment are hereby repeated and realleged as if fully set forth in COUNT THREE through COUNT EIGHT.

### COUNT THREE

The Grand Jury further charges:

### Conspiracy to Murder Joseph Fiorito

49. From in or about January, 1990, through in or about September, 1990, in the Southern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Luchese Family of La Cosa Nostra, an enterprise engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), the defendants JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey K," and others known and unknown, unlawfully, intentionally and knowingly conspired to murder Joseph Fiorito, in violation of the New York State Penal Law.

35

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT FOUR

The Grand Jury further charges:

### Murder of Joseph Fiorito

50.    On or about September 20, 1990, in the Southern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Luchese Family of La Cosa Nostra, an enterprise engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), the defendants JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey K," and others known and unknown, unlawfully, intentionally and knowingly murdered and aided and abetted the murder of Joseph Fiorito, in violation of the New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT FIVE

The Grand Jury further charges:

### Conspiracy to Murder Anthony Fava

51.    From in or about the spring of 1991, through in or about September, 1991, in the Southern District of New·York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Luchese Family of La Cosa Nostra, an enterprise engaged in racketeering activity as that term is defined by Title 18, United States Code, Sections 1961(1) and 1959(b)(1), the defendant ANTHONY BARATTA, a/k/a "Bowat," and others known and unknown, unlawfully, intentionally and knowingly

36

conspired to murder Anthony Fava, in violation of the New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## COUNT SIX

The Grand Jury further charges:

### Murder of Anthony Fava

52. On or about September 19, 1991, in the Southern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Luchese Family of La Cosa Nostra, an enterprise engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), the defendant ANTHONY BARATTA, a/k/a "Bowat," and others known and unknown, unlawfully, intentionally and knowingly murdered and aided and abetted the murder of Anthony Fava, in violation of the New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT SEVEN

The Grand Jury further charges:

### The Conspiracy and Attempt to Murder Nelson Couneè

53. From in or about January, 1985, through in or about March, 1990, in the Southern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Luchese Family of La Cosa Nostra, an enterprise engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and

37

1959(b)(1), the defendant ANTHONY BARATTA, a/k/a "Bowat," ANTHONY DiMEGLIO, a/k/a "Big Anthony," and others known and unknown, unlawfully, intentionally and knowingly attempted and conspired to murder Nelson Counee, in violation of the New York State Penal Law.

(Title 18, United States Code, Sections 1959(a)(5) and 2.)

## COUNT EIGHT

The Grand Jury further charges:

### The Conspiracy to Murder Vladimir Jadick

54.   From in or about the spring of 1991, through in or about September, 1991, in the Southern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing their positions in the Luchese Family of La Cosa Nostra, an enterprise engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), the defendant ANTHONY BARATTA, a/k/a "Bowat," and others known and unknown, unlawfully, intentionally and knowingly conspired to murder Vladimir Jadick, in violation of the New York State Penal Law.

(Title 18, United States Code, Section 1959(a)(5).)

## Extortion of Businesses

## COUNT NINE

The Grand Jury further charges:

### American Application Associates of New Jersey

55.   From in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO,

38

a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, American Application Associates of New Jersey, Inc., which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce.

(Title 18, United States Code, Section 1951.)

### COUNT TEN

The Grand Jury further charges:

#### K. M. Gabel Company, Inc.

56.  From in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to obtain property, to wit, money, by extortion, from and with the consent of the owners and operators of a certain business, namely, K. M. Gabel Company, Inc., New Jersey, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did

39

obstruct, delay and affect commerce.

(Title 18, United States Code, Section 1951.)

### COUNT ELEVEN

The Grand Jury further charges:

### Partner's Lounge Bar

57.   From in or about March, 1989, through in or about November, 1989, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," ANTHONY RUSSO, a/k/a "Curly," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to obtain property, to wit, money, by extortion, from and with the consent of the owner and operator of a certain business, namely, the Partner's Lounge bar, which was engaged in interstate commerce, and from persons associated with said business, which consent had been induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce.

(Title 18, United States Code, Section 1951.)

### Extortionate Extensions of Credit

### COUNT TWELVE

The Grand Jury further charges:

### Conspiracy to Make Extortionate Extensions of Credit

58.   From in or about January, 1979, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a

40

"Curly," JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS,

a/k/a "Joey K," PIETRO MISURACA, a/k/a "Petey Pizza," and others

known and unknown, unlawfully, willfully, and knowingly combined,

conspired, confederated and agreed together and with each other to

make extortionate extensions of credit, as that term is defined in

Title 18, United States Code, Section 891.

(Title 18, United States Code, Sections 891 and 892.)

41

## COUNT THIRTEEN

The Grand Jury further charges:

Conspiracy to Collect Extensions of Credit by Extortionate Means

59.  From in or about January, 1979, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," JOSEPH MASSARO, a/k/a "Joey Bang Bang," JOSEPH KERNS, a/k/a "Joey K," PIETRO MISURACA, a/k/a "Petey Pizza," and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to use extortionate means to collect and attempt to collect extensions of credit, and to punish persons for the non-payment of said extensions of credit, as that term is defined in Title 18, United States Code, Section 891.

(Title 18, United States Code, Sections 891 and 894.)

## COUNT FOURTEEN

The Grand Jury further charges:

Financing Extortionate Extensions of Credit

60.  From in or about January, 1979, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY RUSSO, a/k/a "Curly," JOSEPH MASSARO, a/k/a "Joey Bang-Bang," and others known and unknown, unlawfully, willfully and knowingly did advance money to other persons with reasonable grounds to believe that it was the intention of such persons to use the money so advanced directly and indirectly for the purpose of making extortionate extensions of

42

credit, as that term is defined in Title 18, United States Code, Section 891.

(Title 18, United States Code, Sections 893 and 2.)

## Illegal Gambling Busineses

### COUNT FIFTEEN

The Grand Jury further charges:

### 2448 Williamsbridge Road, Bronx, New York

61. From in or about March, 1990, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," ANTHONY DiMEGLIO, a/k/a "Big Anthony," and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, to wit, a crap game at 2448 Williamsbridge Road, Bronx, New York, in violation of the laws of the State of New York, to wit, Section 225.05 of the New York State Penal Law, which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and had remained in substantially continuous operation for in excess of thirty (30) days and had gross revenues of $2,000 in a single day.

(Title 18, United States Code, Sections 1955 and 2.)

### COUNT SIXTEEN

The Grand Jury further charges:

62. From in or about November, 1982, up to and including the date of the filing of this Indictment, in the Southern District

43

of New York and elsewhere, the defendant ANTHONY RUSSO, a/k/a "Curly," and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, namely, a crap game at 183 Grand Street, New York, New York, in violation of the laws of the State of New York, to wit, Section 225.05 of the New York State Penal Law, which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and had remained in substantially continuous operation for in excess of thirty (30) days and had gross revenues of $2,000 in a single day.

(Title 18, United States Code, Sections 1955 and 2.)

## Travel in Aid of A Racketeering Enterprise

### COUNT SEVENTEEN

The Grand Jury further charges:

#### Travel to Maryland

63. From in or about September, 1988, through in or about November, 1989, in the Southern District of New York and elsewhere, the defendant ANTHONY DiMEGLIO, a/k/a "Big Anthony," together with others known and unknown, unlawfully, willfully and knowingly did travel in interstate commerce with intent to (i) distribute the proceeds of unlawful activities, namely, the arson of the Bingo Palace, Route 3, Gambrills, Maryland, (ii) commit crimes of violence to further such unlawful activities, and (iii) promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful

44

activities, and thereafter performed and attempted to perform acts described in (i), (ii) and (iii) above, respectively.

(Title 18, United States Code, Sections 1952 and 2.)

### COUNT EIGHTEEN

The Grand Jury further charges:

### Travel to New Jersey

64.   From in or about January, 1989, through in or about February, 1990, in the Southern District of New York and elsewhere, the defendants ANTHONY BARATTA, a/k/a "Bowat," and JOSEPH MASSARO, a/k/a "Joey Bang Bang," together with others known and unknown, unlawfully, willfully and knowingly did travel in interstate commerce with intent to (i) distribute the proceeds of unlawful activities, namely, the extortion of K. M. Gabel Company, Inc., New Jersey, and of American Application Associates of New Jersey, (ii) commit crimes of violence to further such unlawful activities, and (iii) promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activities, and thereafter performed and attempted to perform acts described in (i), (ii) and (iii) above, respectively.

(Title 18, United States Code, Sections 1952 and 2.)

_____
FOREPERSON

OTTO G. OBERMAIER
United States Attorney

45