UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/2/2021

United States of America,

–v–

Joseph Massaro,

        Defendant.

92-cr-529 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Joseph Massaro moves for compassionate release pursuant to 18 U.S.C. § 3582(c). The Court concludes that the despite the extraordinary circumstances of the COVID-19 pandemic, the sentencing factors in 18 U.S.C. § 3553(a) do not favor a reduction in Mr. Massaro's sentence. The Court thus denies his motion.

**I.    Background**

    **A.    Underlying Offenses and Incarceration**

    Mr. Massaro was a soldier in the Luchese Family of La Cosa Nostra from at least 1980 through his arrest in 1992. Presentence Investigative Report ¶¶ 34, 44, 65. During his years-long membership in that criminal enterprise, Mr. Massaro was involved in racketeering activity including extortion, arson, loansharking, and illegal gambling. *Id.* ¶¶ 48–96, 100. In September 1990, Mr. Massaro murdered an associate of his crew, Joseph Fiorito. *Id.* ¶ 102.

    The circumstances of the murder are particularly shocking. During the summer of 1989, Mr. Massaro came to believe that Mr. Fiorito had been stealing from him. Dkt. No. 177-2, at 4–5. Mr. Massaro and an associate lured Mr. Fiorito to the basement of an empty home. Then, Mr. Massaro shot him in the head. *Id.* The two positioned Mr. Fiorito upright in a car. Later that

day, Mr. Massaro expressed concern that Mr. Fiorito might not be dead. *Id.* To make sure, he shot him in the head a second time. There is no evidence that anyone but Mr. Massaro ordered or sanctioned Mr. Fiorito's murder. PSR ¶ 102.

Mr. Massaro's other racketeering activities also frequently involved violence. In the course of attempting to wrest control of a talent agency from its rightful owner, Mr. Massaro directed one of his associates to assault the owner and firebomb the business's offices. *Id.* ¶ 104. He was involved in schemes to extort money from and set fire to several other businesses, too. *Id.* ¶ 103. Victims of his protection rackets and other extortionate schemes stated that Mr. Massaro "terrorized" them and made their lives "a 'living hell.'" *Id.* ¶¶ 114, 116. One of his victims, fearful of further retribution, slept with a shotgun long afterward. *Id.* ¶ 119.

The Government charged Mr. Massaro with ten racketeering-related counts, including murder in the aid of racketeering. Dkt. No. 1. A jury convicted Mr. Massaro on all counts in a trial before Judge Miriam Cedarbaum. Judge Cedarbaum sentenced him to a term of life imprisonment, which was mandatory under the Sentencing Guidelines at the time. Dkt. No. 116; *see* 18 U.S.C § 1959(a)(1) (1988). Mr. Massaro is serving his sentence at the FCI Allenwood medium-security facility.

### B.     Procedural History

Mr. Massaro submitted an administrative request for compassionate release to the warden of USP-Lewisburg, where he was then housed, and the warden denied the request. Massaro Br., Dkt. No. 183, at 3; *see* Dkt. No. 185, at *42–48. He then filed a pro se motion for compassionate release in this Court on July 10, 2020. The Government opposed. Dkt. No. 188. Following the death of Judge Cedarbaum, the case was reassigned to the undersigned. On January 4, 2021, Mr.

Massaro filed a request to amend his initial pro se motion, and that request is granted.

**II.     Discussion**

The compassionate release statute provides a limited exception to the rule that "[f]ederal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed.'" *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The First Step Act of 2018, 132 Stat. 5194, 5239, authorizes a defendant serving their sentence to move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020). "Chief among the[] changes [made by the First Step Act] was the removal of the BOP as the sole arbiter of compassionate release motions." *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). In *Brooker*, the Second Circuit held that the current version of U.S.S.G. § 1B1.13 does not apply to compassionate release motions other than those made on behalf of a prisoner by the BOP. *See Brooker*, 976 F.3d at 235–36. As a result, "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion" in deciding a compassionate release motion brought directly by a prisoner. *Id.* at 237. The Court therefore looks to § 1B1.13 for guidance in the exercise of its discretion, but is free to consider "the full slate of extraordinary and

compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

The Government does not contest exhaustion. Gov. Br. at 1. Notwithstanding the Government's arguments to the contrary, the Court also finds that the pandemic amounts to an extraordinary and compelling circumstance in Mr. Massaro's case. Given Mr. Massaro's advanced age—seventy-seven years old—and his history of strokes, breathing difficulties, and other medical problems, he faces a substantial risk of serious illness or death from COVID-19 in prison. *See, e.g.*, *United States v. Williams-Bethea*, No. 18-cr-78 (AJN), 2020 WL 2848098, at *4 (S.D.N.Y. June 2, 2020); *Scparta*, 2020 WL 1910481, at *9; *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020); *accord United States v. Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020).

The Court's analysis, however, does not end there. The compassionate release statute requires the Court to consider the factors set forth in 18 U.S.C. § 3553(a). Upon consideration of those factors, it concludes that a reduction in sentence is unwarranted.

Although the undersigned did not sentence Mr. Massaro, the Court has carefully considered how that § 3553(a) factors apply in his case. Mr. Massaro's crimes were as numerous as they were serious. He engaged in at least a decade of racketeering activity during which he routinely inflicted violence for pecuniary gain. His victims—those that lived—lived in fear of him. Not all did. His murder of Mr. Fiorito—again, for pecuniary gain—was particularly callous. In what appears to have been a meticulously planned endeavor, he lured Mr. Fiorito to an empty home and shot him in the head. Later the same day, after time to reflect, Mr. Massaro appears to not to have doubted his decision to murder Mr. Fiorito, but only his marksmanship. He shot Mr. Fiorito in the head again to make sure he was dead. This conduct was not a single incident. It was a pattern of exceptionally violent criminal

behavior in service of a dangerous criminal organization that reflected a complete disregard for human life and for the law.

The Court also considers the mitigating factors Mr. Massaro has raised. Mr. Massaro has strong family ties. He has ten children and twenty-three grandchildren. Massaro Br. at 6. His wife, who he intends to live with if he is released, has terminal cancer. *Id.* He has submitted letters of support from family members and others. Dkt. No 185, at *99–124. The Court credits Mr. Massaro's statements that he has not had any citations while incarcerated. Motion to Amend at 14. And it notes that Mr. Massaro has become a pastor since his conviction and has a reputation in prison as a kind and generous person. Dkt. No. 185, at *112, 128–35.

The Court takes into account the effect of the COVID-19 pandemic on the balance of the § 3553(a) factors. The pandemic has imposed serious health risks on incarcerated persons. Mr. Massaro is at high risk, both because of his age and his medical conditions. Apart from health risks, the pandemic has also placed other burdens on incarcerated individuals including reduced opportunities for movement within prisons and for visitation.

Considering all of these factors, the Court finds that the sentence imposed remains the minimum necessary to effectuate the purposes of sentencing. Mr. Massaro terrorized members of his community and committed a callous murder, all for profit. He engaged in numerous violent acts in aid of racketeering over a period of at least ten years. A sentence of life in prison is necessary to reflect to seriousness of his offenses, to deter like conduct, and to protect the public from further like crimes. A reduction in sentence, even in light of changes in Mr. Massaro's personal characteristics and the circumstances of his confinement, would not effectuate the purposes of sentencing.

Despite substantial evidence of rehabilitation, the Court has concerns that Mr. Massaro,

were he released today, would continue to pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). To be sure, Mr. Massaro is now seventy-seven years old and in ill health. But he was hardly a young man when he murdered Mr. Fiorito. He spent a substantial portion of his life involved in violent criminal conduct, including ordering others to commit acts of violence on his behalf. Both his past conduct and his longstanding connections to organized crime suggest that he might be able to inflict further harm on the community even in old age.

The Court also rejects Mr. Massaro's arguments that his sentence should be reduced because the Sentencing Guidelines are no longer mandatory. Mr. Massaro does not contest that the statute of conviction allowed a sentence of life imprisonment. Although the statute at the time did not make a life sentence mandatory, what the Sentencing Guidelines accomplished then, the amended statute accomplishes today. *Compare* 18 U.S.C. § 1959(a)(1) (1988), *with* 18 U.S.C. § 1959(a)(1) (2018). By the time the Supreme Court held that the Sentencing Guidelines were not mandatory in *United States v. Booker*, 543 U.S. 220 (2005), Congress had already amended § 1959 to require at least a life sentence for murder in aid of racketeering. *See* Violent Crime Control and Law Enforcement Act of 1994 § 60003, Pub. L. No. 103–322, 108 Stat. 1796, 1969–1970. That is, at no time between when Mr. Massaro was sentenced and today could he have received a lower sentence for his crimes. Nor does the Court believe that any court would have imposed a lower sentence even if it had discretion to do so. To the extent that Mr. Massaro argues that his sentence was legally improper, those contentions presumably should have been raised on appeal or through a motion under 28 U.S.C. § 2255. The Court does not find that the manner in which the Guidelines' range was calculated in Mr. Massaro's case has any bearing on

6

its analysis of the § 3553(a) factors

Having considered the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that they do not support compassionate release. It thus declines to exercise its discretion to reduce Mr. Massaro's sentence.

### III. Conclusion

For the foregoing reasons, the Court DENIES Mr. Massaro's motion for compassionate release (Dkt. No. 183). The Court further finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Massaro and to note the mailing on the public docket.

SO ORDERED.

Dated: February 2, 2021
New York, New York

_____
ALISON J. NATHAN
United States District Judge